not sufficient ground for quashing the array and ordering a refilling of the wheel. It is true it was an irregularity, but the evidence showed that the wheel had not been tampered with, or the seal in anywise disturbed. The 93d, 94th and 95th sections of the act of 1834 specify circumstances when the array is to be quashed and the jury wheel emptied and refilled. But this irregularity in the manner of sealing was not embraced in any of the provisions of these three sections, and therefore as the prisoner was not in any way prejudiced by it, I came to the conclusion that it was not a sufficient ground for quashing the array and ordering a refilling of the wheel. In this we were overruled by the supreme court. But the facts of the present case are very different from the previous one, as we have explained and and we think the provisions of the law have been complied with.

Unless the rights of a defendant have been violated or he has in any way been prejudiced, or the provisions of the law have been evidently disregarded, we do not think that courts should lend a very willing ear to objections that are so purely technical in their character. It tends to bring the administration of justice into discredit, and destroys that sense of security, which should always be felt in every law-governed community.

---

## SAME *v.* SAME.

The act of 1834 authorized the selection of talesmen from the bystanders and from the body of the county, and the 41st section of the criminal procedure act of 1860, which authorizes the courts to issue a *tales de circumstantibus* when necessary, does not repeal the act of 1834, so as to limit the selection of talesmen to the "bystanders."

Homicide.

Opinion delivered October 29, 1873, by

GREEN, P. J. And now, October 29, the prisoner moves to quash the panel of 100 talesmen for the following reasons :

1st. The writ of *venire* upon which the jurors were summoned, does not follow the order of the court made for said writ, which was for talesmen *de circumstantibus*.

2d. The jurors summoned and returned are not *de circumstantibus*, but of the county at large, having been summoned from various places in said county.

3d. Because the jurors were not summoned for the trial of this case, but for the trial of all issues.

4th. Because the sheriff, prior to the execution of this writ, has formed and expressed an opinion unfavorable to the innocence of the prisoner, and therefore is not impartial, and is incompetent to execute this process of the court.

Under the act of 1805, the talesmen could only be selected from the "bystanders," but under the act of 1834 the talesmen were authorized to be taken from the bystanders and from the body of the county. The 41st section of the criminal procedure act of 1860, authorizes the courts to issue a *tales de circumstantibus*, when occasion shall render the same necessary.

We do not think that this section repeals the act of 1834 so as to limit the selection of talesmen from the "bystanders," but that the phrase "*tales de circumstantibus*," is used simply for the purpose of designating the writ to be issued.   This is a reasonable construction of the section.   Any other would amount practically to a discharge of the prisoner or to an acquittal, for he could never be tried.   We think, therefore, that this ground for quashing the panel is not sustained.   We also think that the writ was properly issued, and that the evidence does not show that the sheriff was disqualified from executing it.   We therefore overrule this motion to quash the panel of talesmen.

Hon. *Lin Bartholomew* and *James B. Reilly*, Esq., District Attorney for Commonwealth; *George R. Kaercher, F. G. Farquhar* and *John W. Ryon*, Esqrs., for defendant.

---

*First Judicial District.*

### In the Court of Common Pleas of Philadelphia.

(*In Equity.*)

---

## WOOD ET AL. *v.* MAITLAND ET AL.

One of several executors has the right to sell stock of his testator, and if he does actually agree to sell, and the price is paid, title passes—but one who deals with another holding a certificate with a power to sell and transfer, signed by the executor, does not obtain a valid security for a loan by the delivery of such certificate and power, unless as matter of fact, there had been a sale and payment of the price, so as to divest the title of the decedent.

Until actual transfer, the title of the purchaser of stock is merely equitable, and persons dealing with him, take the risk that the equitable title is such that he can compel a transfer of the legal title.

This was a motion to continue a special injunction.

Charles S. Wood died in May, 1873, being the owner of a number of shares of stock of the Cambria Iron Company, which stood in his own name.   By his will he named four executors, all of whom took out letters.

George R. Wood, one of the executors, delivered a certificate for 1905 shares of this stock to McDowell & Wilkins, brokers in this city, such a power of attorney in the usual form reciting a sale to————and authorizing————as his attorney to sell and transfer the shares to————. This was signed by him as acting executor.

McDowell & Wilkins borrowed from Maitland & Audendried, $9000, and as collateral for the loan, agreed to give, and did give them this certificate and the accompanying power of attorney.

The other executors discovering the fact, filed a bill to have the certificate returned to them and for an injunction to restrain the transfer.

The motion was argued on Friday last.   For the motion it was urged that the legal title to the stock was in the testator, and nothing was shown to displace that but an authority to sell which had never been executed in fact.   And the lenders on stock took the risk, that the person they received it from, had a title or authority to deal with it in this way.   That as